UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

LAURA HENRY,

    Plaintiff,                                    Civil Action No. 04-73247

v.                                             HON.  ARTHUR J. TARNOW,
                                                 U.S. District Judge
                                                 HON. R. STEVEN WHALEN,
COMMISSIONER OF SOCIAL         U.S. Magistrate Judge
SECURITY,

    Defendant.

_____/

## REPORT AND RECOMMENDATION

Plaintiff Laura Henry brings this action under 42 U.S.C. §405(g) challenging a final decision of Defendant Commissioner denying her application for disability Insurance Benefits (DIB) pursuant to §§ 216(i) and 223 of the Social Security Act.  Both parties have filed summary judgment motions which have been referred for a Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1)(B).  I recommend that Defendant's Motion for Summary Judgment be granted, and Plaintiff's Motion for Summary Judgment be denied.

## PROCEDURAL HISTORY

Plaintiff, Laura M. Hudson Henry applied for disability benefits on August 18, 1999 alleging a disability date of December 11, 1998 (Tr. 63-65). ALJ John A. Ransom, presided

over a hearing held on October 31, 2001 in Flint, Michigan. Plaintiff, represented by Victor Galea testified (Tr. 321-333). Vocation expert (VE) Ann Tremblay also testified (Tr. 333-338). ALJ Ransom found Plaintiff disabled within the meaning of the Social Security Act, due to degenerative disc disease, carpal tunnel syndrome, recurrent headaches and dythymic disorder (Tr. 201).

On November 19, 2001, the Appeals Council remanded the ALJ's decision for further proceedings on several grounds (Tr. 207-209). It found that Plaintiff's carpal tunnel syndrome (CTS) was not a medically determinable impairment; the ALJ ignored the VE's finding that Plaintiff could perform a number of sedentary jobs; Plaintiff's RFC supported a finding that she could perform a full range of light work; and contrary to the requirements of Social Security Ruling (SSR) 96-5, the ALJ failed to explain why he accepted or rejected the medical source statement provided by Dr. Forrer (Tr. 207-209).

ALJ Ransom held a rehearing on September 24, 2003. Plaintiff, represented by Mikel Lupisella testified (Tr. 348-358). Brian James Beck D.O., testified as the medical expert (ME). Judith Fidora, VE, also testified (Tr. 364-368). The ALJ found that although Plaintiff experienced severe impairments, she retained the ability to perform a limited range of light work (Tr. 29). The Appeals Council denied review on July 31, 2004 (Tr. 6-9). Plaintiff filed the present action on August 23, 2004.

## I. BACKGROUND FACTS

**A.     Plaintiff's Testimony**

    **1.     October 31, 1999 Hearing**

Plaintiff, divorced, testified that she lived with her son in a single-family dwelling in Flint, Michigan (Tr. 321-322). She stated that she received a disability pension from General Motors of approximately $1,750.00 per month along with a workers compensation award (Tr. 322). Plaintiff, forty-eight, reported that she completed high school and one year of community college (Tr. 323). She stated that she had not gone back to work since December,1998, explaining that her 1999 income statement reflected salary drawn during sick leave (Tr. 323).

Plaintiff reported that she stopped working after experiencing difficulty using her hands and arms as well as neck stiffness (Tr. 324). She described her hand, wrist, and elbow discomfort as "pretty severe," indicating that her aching hands obliged her to pick up objects with both hands to avoid dropping them (Tr. 324). She related that her neck stiffness caused frequent headaches, estimating that she suffered from headaches four to five times a week (Tr. 325). She reported that an examining surgeon told her that surgery would not reduce her neck pain (Tr. 326).

Plaintiff testified that she took Norflex, Midrin, and Imitrex (Tr. 326-327). She stated that her headaches occurred with less frequency since she began taking Midrin, estimating that her headaches lasted several hours rather than several days (Tr. 327). She indicated that Imitrex gave her moderate relief from neck and arm pain, but that it caused her to experience drowsiness to the extent that she felt as if she "were walking in a daze" (Tr. 328).

She stated that although Imitrex improved her condition, she could not lift an object heavier than a glass of water, and never attempted to reach overhead (Tr. 329). She reported that she could not walk for more than five minutes without experiencing back and neck pain (Tr. 329). She stated that she could not stand or sit for more than twenty minutes continually, added that sitting in one position for a longer period created numbness (Tr. 330).

Plaintiff reported that she managed to avoid most housework by using paper plates and requiring her son to wash his own clothes (Tr. 330). She testified that she grocery shopped, but avoided shopping for more than half an hour at a time (Tr. 331). She stated that she volunteered at her son's school, accompanying students on field trips (Tr. 331). She indicated that on days that she experienced the most pain she would lie down most of the day, but added that she visited with friends and family regularly and continued to drive on a regular basis (Tr. 332). She stated that she met friends for dinner occasionally and enjoyed photography, adding that her condition prevented her from pursuing her hobby more regularly (Tr. 333).

### 2.    September 24, 2003 Hearing

Plaintiff, now fifty, stated that she was right handed (Tr. 349). She indicated that she stopped working because her shoulder, neck and wrist problems prevented her from lifting fifteen to twenty pounds required in her job (Tr. 349). She stated that her condition had gotten worse since she first stopped working (Tr. 350). She indicated that her pain medication continued to cause drowsiness (Tr. 351).

Plaintiff, 5' 10," reported that she had lost weight in the past two years, going from

210 to 175 pounds (Tr. 351). She stated that she grocery shopped once every two weeks (Tr. 352). She reported that she had recently received emergency room treatment for flu-like symptoms, indicating that she had not sought any other emergency treatment since her first hearing (Tr. 351). She testified that avoided climbing stairs at home because of fatigue (Tr. 352). She stated that she did not socialize much, but attended church services once a week (Tr. 352). She reported that she did not perform yard work and that her sister cleaned her kitchen when she visited (Tr. 353). She testified that she slept poorly, waking up several times a night, which obliged her to nap three to four hours during the day (Tr. 353).

Plaintiff stated that she could sit for up to thirty minutes and stand for ten minutes (Tr. 354). She estimated that she could not lift an object weighing more than a half gallon of milk (Tr. 354). She testified that she avoided walking, indicating that she could not walk more than the length of an aisle at the supermarket (Tr. 354). She stated that her most comfortable position was lying down with a cervical pillow under her neck (Tr. 355). She reported that she took Fioricet for migraine headaches, which occurred approximately three times a week (Tr. 356). She stated that she received treatment from a therapist bi-weekly and saw a psychiatrist on a monthly basis (Tr. 357). She indicated that she continued to receive a disability pension and workers compensation (Tr. 357).

### B.     Medical Records

Nerve conduction studies performed in June, 1998 showed "mild Carpel Tunnel Syndrome (CTS) only" (Tr. 158). In October, 1999 S. A. Evanoff, D.O., examined Plaintiff

on behalf of the State of Michigan (Tr. 121). He recorded that Plaintiff complained of hand and wrist pain, as well as neck pain attributable to injuries sustained in a 1996 car accident (Tr. 121). He reported that Plaintiff used Tylenol with codeine #3 and Fioricet for headaches (Tr. 121). He diagnosed Plaintiff with chronic pain syndrome of the cervical spine, shoulders, hands, and wrists (Tr. 124).

In November, 1999 Plaintiff underwent a psychiatric evaluation (Tr. 127). Gordon Forrer, M.D., noted that Plaintiff maintained "close ongoing family relationship[s]" and had "a very good self image" (Tr. 128-129) He described Plaintiff's mood as mildly apathetic, finding that she did not experience anxiety or depression (Tr. 129). He concluded by stating that he found Plaintiff "[p]sychologically adequate" (Tr. 132).

A Physical Residual Functional Capacity Assessment performed in the same month showed that Plaintiff experienced a limited range of neck motion and difficulty grasping, concluding that Plaintiff could perform a limited range of work at the medium exertional level (Tr. 134). A Psychiatric Review Technique Form completed the same month concluded that Plaintiff's impairment of "chronic depressive neurosis with pre-menopausal syndrome" was not severe (Tr. 141, 144).

Also in November, 1999 Leonard Balunas, Ph.D., performed a psychological examination, noting that Plaintiff was dressed appropriately and expressed herself "in a logical and well-organized manner" (Tr. 191). Finding that Plaintiff was mildly depressed, he noted that Plaintiff should seek psychiatric treatment (Tr. 191, 193). Dr. Balunas assigned Plaintiff a GAF score of 65 (Tr. 193).

In May, 2002 Neil A. Friedman, M.D., examined Plaintiff, noting that her MRI studies were all negative (Tr. 243). Dr. Friedman reported that Plaintiff appeared "to put forth less than maximal effort" on the range of motion tests (Tr. 244). He reported that she demonstrated "poor effort" in formal grip strength testing, further noting that she had apparently disrobed and donned a dressing gown for the examination without difficulty (Tr. 245).

In May, 2002 Plaintiff sought treatment for depression(Tr. 263). She told Jae C. Kim, M.D., that she had been depressed for years (Tr. 263). He noted that Plaintiff was neatly dressed with erect posture (Tr. 264). He gave Plaintiff a "guarded" prognosis, assigning her a GAF of 55 (Tr. 265). He prescribed her Neurontin (Tr. 266).

In November, 2002 Syed A. Sattar, M.D., examined Plaintiff, noting that she complained of frequent migraine headaches (Tr. 307). Dr. Sattar prescribed Imitrex for Plaintiff, noting at a follow up appointment that Plaintiff's headaches were "getting under control" (Tr. 307). In February, 2003, Plaintiff reported shoulder pain (Tr. 304). Dr. Sattar recommended that Plaintiff exercise at home and continue her medications (Tr. 304). He noted that her hand grips were normal (Tr. 304).

    **C.    Medical Expert**

Medical Expert Brian James Beck reported that he was a primary care physician (Tr. 358). In response to his questions, Plaintiff acknowledged that she dressed herself (Tr. 358). She stated that she had discontinued Imitrex, because she feared that it would aggravate her

heart condition (Tr. 359). She stated that she was not currently undergoing physical or occupational therapy (Tr. 359). She stated that she had received two Botox injections in the past for neck pain (Tr. 380).

Dr. Beck diagnosed Plaintiff with cervical myalogia and mild to moderate depression, stating that she did not meet or equal any of the listings of impairments (Tr. 380). He stated that based on his examination of Plaintiff's medical records, no restrictions should be placed on her ability to work (Tr. 361).

### D.     Vocational Expert

VE Judith Findora classified Plaintiff's previous work as a production worker as unskilled at the light exertional level (Tr. 104, 365).

The ALJ posed the following hypothetical question to the VE:

> "I would like you to assume for me, if you would, that she's 50 years old with her education and her past work as they appear in the record and assume further if you would that she has the limitations and impairments that she's alleged and that her testimony is credible. In your opinion, could she perform any of her past work or any other light or sedentary work?"

(Tr. 365).

The VE replied that Plaintiff's alleged need to take naps approximately two hours a day and migraines would preclude all full-time employment (Tr. 365). The ALJ then posed another question:

> "Assume for me, if you would, that she could perform light work, no repetitive bending, twisting, turning, pushing, pulling, gripping, grasping or torquing, no prolonged or repetitive rotation, flexion or extension of her neck, no overhead work, and simple, repetitive work. Assuming those facts, in your opinion, would there be jobs in existence in significant numbers in the regional

economy that she could perform, including any of her past work?"

The VE stated that given the above limitations, Plaintiff could not perform her past work, but could perform the work of a cashier (16,800 jobs), a machine operator (20,000 jobs), general clerk (11,500), security positions (10,700 jobs), and sales clerk (12,000 jobs) (Tr. 366). The VE reported that her testimony was consistent with the Dictionary of Occupational Titles (DOT) and its companion publication (Tr. 366).

In response to the attorney's questions, the VE stated that if the hypothetical were to include a sit-stand option, the sales position would be eliminated and the security position would be modified to approximately 8,000 (Tr. 366). The VE testified that if the prohibition against repetitive bending, twisting, turning, pushing, pulling, gripping, grasping or torquing, were changed to limit Plaintiff to only *occasional* bending, twisting, turning, pushing, pulling, gripping, grasping or torquing, all of the above jobs would be eliminated with the exception of the security position, which would be modified from 10,700 to 8,000 jobs (Tr. 367).

### E.    The ALJ's Decision

The ALJ found that although Plaintiff experienced the severe impairments of cervical myalgia, mild carpal tunnel syndrome, and mild to moderate depression, none of her impairments "were sufficiently severe in order to satisfy the requirements of the listings" (Tr. 25).

The ALJ determined that although Plaintiff could not perform the requirements of her

past relevant work, she possessed the Residual Functional Capacity (RFC)

> "to lift/carry 20 pounds occasionally and 10 pounds frequently; she is able to sit a total of about six hours in an eight hour workday, with normal breaks; she is able to stand/walk a total of about six hours out of an eight-hour workday, with normal breaks; she can do no repetitive bending, twisting, turning, pushing, pulling, grasping, gripping, or torqueing; she can do no repetitive rotation, flexion, or extension of the neck; and she can do no overhead work. In addition, she is limited to the performance of simple/repetitive work tasks, because of moderate difficulties in maintaining concentration, persistence, or pace"

(Tr. 26).

The ALJ found that Plaintiff could perform unskilled work at the light exertional level, adopting the VE's finding that Plaintiff could perform approximately 71,000 jobs in the regional economy (Tr. 27-28). The ALJ concluded that Plaintiff's allegations of limitation and pain were "not fully credible," citing her statement to Dr. Kim that she did not want to return to the workforce and the lack of record support for "her [alleged] need to lie down for an inordinate amount of time during the day" (Tr. 26, 29).

### **STANDARD OF REVIEW**

In adopting federal court review of Social Security administrative decisions, Congress limited the scope of review to a determination of whether the Commissioner's decision is supported by substantial evidence. 42 U.S.C. §405(g); *Sherrill v. Secretary of Health and Human Services,* 757 F.2d 803, 804 (6th Cir. 1985). Substantial evidence is more than a scintilla but less that a preponderance. It is "such relevant evidence as a reasonable mind

might accept as adequate to support a conclusion." *Richardson v. Perales,* 402 U.S. 389, 401 (1971) (*quoting Consolidated Edison Co. v. NLRB,* 305 U.S. 197, 229, S. Ct. 206, 83 L.Ed.126 (1938)). In determining whether the evidence is substantial, the court must "take into account whatever in the record fairly detracts from its weight." *Wages v. Secretary of Health & Human Services*, 755 F.2d 495, 497 (6th Cir. 1985). Furthermore, the Commissioner's findings are not subject to reversal merely because substantial evidence exists in the record to support a different conclusion. *Mullen v. Bowen,* 800 F.2d 535, 545 (6th Cir. 1986)(en banc).

In determining the existence of substantial evidence, it is not the function of this court to try cases de novo, resolve conflicts in the evidence, or decide questions of credibility. *Brainard v. Secretary of Health & Human Services,* 889 F.2d 679, 681 (6th Cir. 1989); *Garner v. Heckler,* 745 F.2d 383, 387 (6th Cir. 1984). The substantial evidence standard "presupposes that there is a 'zone of choice' within which decision makers can go either way, without interference from the courts." *Mullen,* 800 F.2d at 545. If the Commissioner's decision is supported by substantial evidence, a reviewing court must affirm. *Studaway v. Secretary of Health and Human Services,* 815 F.2d 1074, 1076 (6th Cir. 1987); *Kirk v. Secretary of Health and Human Services,* 667 F.2d 524, 535 (6th Cir. 1981), *cert. denied,* 461 U.S. 957 (1983).

## **FRAMEWORK FOR DISABILITY DETERMINATIONS**

Plaintiff has the initial burden of establishing entitlement to benefits by proving the existence of a disability. *Tyra v. Secretary of Health and Human Services,* 896 F.2d 1024,

-11-

1028 (6th Cir. 1990). Disability is defined in the Social Security Act as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §423(d)(1)(A).

The mere existence of an impairment, even a severe one, will not entitle the claimant to disability benefits unless the impairment prevents him from returning to his past work or any other substantial gainful activity existing in the national economy considering his age, education and work experience. 42 U.S.C. §423(d)(2)(A); 20 C.F.R. § 404.1505. A claimant's subjective allegations of disabling symptoms are insufficient by themselves to support a claim for benefits, *Buxton v. Halter,* 246 F.3d 762, 773 (6th Cir. 2001); *Sizemore v. Secretary of Health and Human Services,* 865 F.2d 709, 713 (6th Cir. 1988), and the symptoms must be substantiated by some objective clinical or laboratory findings. *Hurst v. Secretary of Health and Human Services,* 753 F.2d 517, 519 (6th Cir. 1985).

In evaluating whether a claimant is disabled, the Commissioner is to consider, in sequence, whether the claimant: 1) worked during the alleged period of disability; 2) had a severe impairment; 3) had an impairment that meets or equals the requirements of an impairment listed in the regulations; 4) can return to his past relevant work; and 5) if not, whether he can perform other work in the national economy. 20 C.F.R. § 416.920(a). The burden shifts to the Commissioner at step five to demonstrate that, "notwithstanding the claimant's impairment, he retains the residual functional capacity to perform specific jobs

existing in the national economy." *Abbott v. Sullivan*, 905 F.2d 918, 926 (6th Cir. 1990); *Cole v. Secretary of Health & Human Services,* 820 F.2d 768, 771 (6th Cir.1987); *Richardson v. Secretary of Health & Human Services,* 735 F.2d 962, 964 (6th Cir.1984)

## **ANALYSIS**

**A.      Hypothetical Question**

Plaintiff argues that the hypothetical question posed by the ALJ and the VE's response, later adopted in the decision, did not accurately reflect her limitations. *Plaintiff's Brief* at 7-8.  Quoting *Varley v. Secretary of Health & Human Services*, 820 f.2d 777, 779 (6th Cir. 1987), Plaintiff maintains that the question's prohibition of *frequent* repetitive bending, twisting, turning, pushing, pulling, grasping, gripping, or torqueing should have been replaced by the greater limitation of only *occasional* participation in these activities. Plaintiff argues that the ALJ should have adopted the state medical examiner's November, 1999 finding which concluded that she should be restricted to only occasional reaching and fingering (Tr. 136).

Contrary to Plaintiff's claim, the ALJ composed the hypothetical question using substantial evidence drawn from her medical records.  Plaintiff cites the November, 1999 RFC Assessment which concludes that Plaintiff should perform only occasional reaching and fingering (Tr. 136).  However, at another point in the evaluation, the reviewing physician concluded that Plaintiff could perform unlimited pushing and pulling (Tr. 134). Even assuming, *arguendo*, that the evaluation's restriction on reaching and fingering applied to all of the activities in the hypothetical (bending, twisting, turning, pushing, pulling, grasping,

gripping, or torqueing) the recording physician indicated in his assessment that these limitations were applicable only to Plaintiff's *non-dominant* (left hand) (Tr. 136). Although Plaintiff argues that the hypothetical question should restrict her to performing the above activities only occasionally, the assessment she cites does not support such a limitation (Tr. 133-139).

Plaintiff also contends that the ALJ improperly used the term "repetitive" in his hypothetical question rather than the "ordinary [DOT] terminology of 'never,' 'occasional', 'frequent' and 'constant.'" *Plaintiff's Brief* at 9. However, as discussed by Defendant:

> "Plaintiff correctly points out that the term "repetitive" is not one of the terms of art defined and used by the [DOT]. This fact however does not preclude the ALJ from describing Plaintiff's abilities in this way. The ALJ called a vocational expert precisely because Plaintiff's restrictions were not encompassed in the ordinary, pre-defined ranges of work so that the expert could provide vocational information about Plaintiff's specific, individual situation."

*Defendant's Brief* at 10-11. Further, the ALJ's hypothetical limitations on bending, twisting, turning, pushing, pulling, grasping, gripping, or torqueing, are more restrictive than the conclusions drawn by the reviewing physician, who as discussed above, placed no restrictions on Plaintiff's abilities to push or pull (Tr. 134).

Plaintiff further argues that the ALJ erred by failing to consider her alleged need to nap for two or three hours at a time for several days a week. *Plaintiff's Brief* at 9. This argument also fails. The ALJ cited numerous reasons for rejecting a portion of Plaintiff's allegations. He pointed out that Plaintiff's diagnostic studies have shown minimal results, if any, to support her claims. Her physician prescribed a medication that improved her

headaches (Tr. 307). Plaintiff told Dr. Kim she was disinclined to work because "work usually require[s] money" and her son's college costs apparently strained her finances (Tr. 269). Dr. Friedman observed that Plaintiff walked, disrobed, unlocked her car, arose from a chair, and picked up a paperclip without difficulty (Tr. 245). Although the ALJ rejected Dr. Friedman's conclusions on the basis that his findings were colored by Plaintiff's failure to use maximum effort on the range of motion tests, Dr. Friedman's findings - like Dr. Kim's - call Plaintiff's allegations of disability into question. Having performed a well supported credibility analysis, the ALJ was not obliged to include all of allegations of pain and limitations that he found unbelievable: "[T]he ALJ is not obliged to incorporate unsubstantiated complaints into his hypotheticals." *Stanley v. Secretary of Health and Human Services,* 39 F.3d 115,118-119 (6th Cir.1994), *quoting Hardaway v. Secretary of Health & Human Servs.,* 823 F.2d 922, 927-28 (6th Cir.1987).

### B. Remand Order

Plaintiff next argues that substantial evidence does not support the ALJ's 2003 finding that Plaintiff could perform a limited range of light work, contending that such a conclusion stands at odds with the ALJ's 2001 finding of disability. *Plaintiff's Brief* at 11. She maintains that evidence submitted after the first finding confirms her earlier determined impairments, mandating another finding of disability. *Id.*

Contrary to Plaintiff's position, the portion of her medical history created after Plaintiff's first hearing lends support to the ALJ's later finding that she could perform a limited range of light work. As discussed by the ALJ, Plaintiff's mental health condition

improved between the middle of 2002 and the beginning of 2003 (Tr. 24). Although Plaintiff alleged debilitating headaches, she had not "sought emergency medical attention" for them (Tr. 26). Plaintiff claimed limitations due to side effects from medication, but as noted by the ALJ, Dr. Kim's evaluation does not state that Plaintiff suffered side effects from any of her medications (Tr. 26).

In addition, the ALJ's 2003 opinion reflects an effort to draw only upon medical sources he found credible. Significantly, the ALJ developed his non-disability finding without the support of two physicians who opined that she was not disabled. As discussed above, Dr. Friedman's observations suggesting non-disability were discounted because of possible bias (Tr. 26). Similarly, Dr. Beck's conclusions were rejected because of his blanket assertion that Plaintiff needed no functional restrictions on her physical or emotional activities (Tr. 26).

For similar reasons, the Court rejects Plaintiff's argument that the remand order should be vacated and the earlier decision reinstated. "[T]he Appeals Council has the power to initiate review of an ALJ decision for any reason whatsoever under 20 C.F.R. § 404.969 . . ." *Duda v. Secretary of Health and Human Services,* 834 F.2d 554, 556 (6th Cir. 1987). *See also Dyer v. Secretary of Health and Human Services,* 889 F.2d 682, 684 (6th Cir. 1989) ("[T]he Appeals Council has the statutory authority to review cases on its own motion, and there is no requirement that it establish formal rules in the manner required by the A.P.A.") Further, the ALJ's decision made subsequent to the order to vacate is amply supported.

This Court notes in closing that its conclusion upholding the ALJ's finding of non-

disability is not intended to trivialize Plaintiff's legitimate impairments. However, the overriding question in this appeal is whether the ALJ's decision was supported by substantial evidence. Based on a review of this record as a whole, the ALJ's decision is within the "zone of choice" accorded to the fact-finder at the administrative hearing level, *Mullen v. Bowen*, *supra*, and should not be disturbed by this Court.

## **CONCLUSION**

For the reasons stated above, I recommend that Defendant's Motion for Summary Judgment be GRANTED, and that Plaintiff's Motion for Summary Judgment be DENIED.

Any objections to this Report and Recommendation must be filed within ten (10) days of service of a copy hereof as provided for in 28 U.S.C. §636(b)(1) and E.D. Mich. LR 72.1(d)(2). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn,* 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985); *Howard v. Secretary of HHS,* 932 F.2d 505 (6th Cir. 1991); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981). Filing of objections which raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation. *Willis v. Secretary of HHS,* 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231,* 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this Magistrate Judge.

Within ten (10) days of service of any objecting party's timely filed objections, the

opposing party may file a response. The response shall be not more than twenty (20) pages in length unless by motion and order such page limit is extended by the court. The response shall address specifically, and in the same order raised, each issue contained within the objections.

s/R. Steven Whalen<br>
R. STEVEN WHALEN<br>
UNITED STATES MAGISTRATE JUDGE

Dated: July 8, 2005

## CERTIFICATE OF SERVICE

The undersigned certifies that a copy of the foregoing order was served on the attorneys and/or parties of record by electronic means or U.S. Mail on July 8, 2005.

s/Gina Wilson<br>
Judicial Assistant